| | |
|---|---|
| RICHARD L. ALLEN, and VALERY S. SANCHEZ, both individually, and on behalf of all others similarly situated, | |
| **Plaintiffs,** | Case No. |
| v. | COLLECTIVE AND CLASS ACTION |
| PINNACLE ENTERTAINMENT, INC., PNK (RIVER CITY), LLC d/b/a RIVER CITY CASINO & HOTEL, and AMERISTAR CASINO KANSAS CITY, LLC, | <u>JURY TRIAL REQUESTED</u> |
| **Defendants.** | |

## COMPLAINT

Plaintiffs Richard L. Allen ("Allen") and Valery S. Sanchez ("Sanchez") (collectively "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their counsel, bring this Complaint against Pinnacle Entertainment, Inc. ("Pinnacle"), PNK (River City), LLC d/b/a River City Casino & Hotel ("River City"), and Ameristar Casino Kansas City, LLC ("Ameristar") (collectively, Defendants), and hereby state and allege as follows:

## INTRODUCTION

1.      Plaintiffs and all other similarly situated employees work or worked for Defendant Pinnacle, a casino entertainment company.

2.      Plaintiff Allen worked at Defendant River City, a casino owned and operated by Defendant Pinnacle in St. Louis, Missouri.  Plaintiff Sanchez worked at Defendant Ameristar, a casino owned and operated by Defendant Pinnacle in Kansas City, Missouri.  Plaintiff Allen was

jointly employed by Defendants Pinnacle and River City. Plaintiff Sanchez was jointly employed by Defendants Pinnacle and Ameristar.

3. Pursuant to their company-wide policies, procedures, and practices, Defendants failed to pay Plaintiffs, and other similarly situated employees, the mandated federal and/or state minimum wage rate for all hours worked and overtime for all hours worked over 40 in a single workweek.

4. In particular, Defendants' time-clock rounding policy, procedure, and practice is used in such a manner that it results, over a period of time, in the failure to compensate their employees properly for all time worked.

5. Defendants also failed to properly inform their tipped employees of the required tip credit provisions.

6. Defendants also improperly allocated funds from the tip or toke pool from which tipped employees are paid in allowing non-tipped and/or managerial employees to receive money from the tip pool.

7. Defendants also failed to pay their employees for participating in compensable training sessions required by Defendants.

8. Defendants also breached a contract with their employees to pay them "paid time off" ("PTO") at the employees' current regular rate of pay at the time it is taken.

9. Defendants' systematic violations of federal and state wage laws were willful.

10. Plaintiffs, on behalf of themselves individually and all others similarly situated, bring this lawsuit as: (a) a collective action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 201 *et seq*., to recover unpaid minimum and overtime wages owed to Plaintiffs and all other similarly situated workers employed by Defendants; and (b) a Rule 23 class action under

Missouri state law, including the Missouri Minimum Wage Law ("MMWL"), R.S.Mo. § 290.500 *et seq*.

## JURISDICTION AND VENUE

11.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over the FLSA claims of Plaintiffs and all others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

12.     Missouri law authorizes court actions by private parties to recover damages for violation of the MMWL's wage and hour provisions. Jurisdiction over the state law claims of Plaintiffs and all others similarly situated is based on 28 U.S.C. § 1367 and R.S.Mo. § 290.527, in that such state law claims are so related to the FLSA claims that they form part of the same case or controversy.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

14.     Plaintiff Allen is a resident of the State of Illinois.

15.     From February 8, 2010 to the present, Plaintiff Allen has been employed by Defendants Pinnacle and River City as a dealer at Defendants' casino located at 777 River City Casino Boulevard, St. Louis, Missouri, 63125. Plaintiff Allen's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached as ***Exhibit A***.

16.     Plaintiff Sanchez is a resident of the State of Missouri.

17.     From October 2, 2014 to the present, Plaintiff Sanchez has been employed by Defendants Pinnacle and Ameristar as a dealer at Defendants' casino located at 3200 Ameristar

Drive, Kansas City, Missouri 64161. Plaintiff Sanchez's Consent to Be a Party Plaintiff pursuant to 29 U.S.C. § 216(b) is attached as ***Exhibit B***.

18.     Defendant Pinnacle is a corporation organized under the laws of the State of Delaware, with its principal place of business located in the State of Nevada. Defendant Pinnacle owns and operates Defendants River City and Ameristar.

19.     Defendant River City is a limited liability company organized under the laws of the State of Missouri. Defendant River City is owned, operated, and controlled by Defendant Pinnacle.

20.     Defendant Ameristar is a limited liability company organized under the laws of the State of Missouri. Defendant Ameristar is owned, operated, and controlled by Defendant Pinnacle.

21.     In Defendant Pinnacle's Form 10-K, filed on February 28, 2017, Exhibit 21 lists Defendants River City and Ameristar as subsidiaries of Defendant Pinnacle.

22.     At all relevant times, Defendants were the employer and/or joint employer of Plaintiffs, and all other similarly situated employees:

>       a.      Both Defendant Pinnacle and Defendant River City had the power to hire and fire Plaintiff Allen and all other similarly situated employees. Both Defendant Pinnacle and Defendant Ameristar had the power to hire and fire Plaintiff Sanchez and all other similarly situated employees;

>       b.      Both Defendant Pinnacle and Defendant River City supervised and controlled the work schedules and conditions of employment of Plaintiff Allen and all other similarly situated employees. Both Defendant Pinnacle and Defendant Ameristar supervised and controlled the work schedules and

conditions of employment of Plaintiff Sanchez and all other similarly situated employees;

c.    Both Defendant Pinnacle and Defendant River City determined the rate and method of payment for Plaintiff Allen and all other similarly situated employees. Both Defendant Pinnacle and Defendant Ameristar determined the rate and method of payment for Plaintiff Sanchez and all other similarly situated employees; and

d.    Both Defendant Pinnacle and Defendant River City maintained employment records (including time clock records) for Plaintiff Allen and all other similarly situated employees. Both Defendant Pinnacle and Defendant Ameristar maintained employment records (including time clock records) for Plaintiff Sanchez and all other similarly situated employees

23.    At all times relevant to this action, Defendants acted by and through their agents, servants, and employees, each of whom acted in the course and scope of their employment with and for Defendants.

## GENERAL ALLEGATIONS

24.    Plaintiffs re-allege the allegations set forth above.

25.    According to Defendant Pinnacle's Form 10-K, filed on February 28, 2017, "Pinnacle Entertainment, Inc. is an owner, operator and developer of casinos and related hospitality and entertainment businesses. … We own and operate 16 gaming, hospitality, and entertainment businesses."

26.    According to Defendant Pinnacle's Form 10-K, filed on February 28, 2017, "[a]s of December 31, 2016, we employed 16,092 full-time and part-time employees."

27.     According to its website (https://www.pnkinc.com/about-us/), Defendant Pinnacle "is a dynamic and growing casino entertainment company with nearly 17,000+ team members."

28.     According to its website (https://www.pnkinc.com/about-us/), Defendant Pinnacle "owns and operates 15 gaming entertainment properties, located in Colorado, Indiana, Iowa, Louisiana, Mississippi, Missouri, Nevada, Ohio and Pennsylvania."

29.     Plaintiffs and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendants at their gaming entertainment properties within the respective limitations periods.

**Unlawful Rounding Violations**

30.     Plaintiffs re-allege the allegations set forth above.

31.     Defendants utilize a computerized system which tracks the exact time (accurate to 1 minute or less) an hourly employee clocks in and clocks out of work.

32.     Even though Defendants maintain a system which records, to the minute, the time an employee clocks in and clocks out, Defendants utilize a rounding system in computing payroll which rounds to the closest 15-minute interval.

33.     For example, an employee who clocks in between 7:53 a.m. and 8:07 a.m. will be treated by Defendants' payroll computations as having clocked in at 8:00 a.m.

34.     Defendants utilize the same rounding system for clock outs.

35.     For example, an employee who clocks out between 5:08 p.m. and 5:22 p.m. will be treated by Defendants' payroll computations as having clocked out at 5:15 p.m.

36.     Viewed in a vacuum, the rounding system utilized by Defendants appears to neither favor Defendants nor their employees as Defendants utilize the same rounding system when an employee clocks in or out.

37.     However, Defendants utilize a disciplinary system to alter the seemingly neutral rounding system in a manner which transforms Defendants' rounding system into a system that is substantially rigged in Defendants' favor.

38.     Pursuant to Defendants' policies, Plaintiffs and all similarly situated employees are required to clock in and commence work approximately 7 minutes before the start of their shift.

39.     Pursuant to Defendants' policies, Plaintiffs and all similarly situated employees are subject to discipline if they clock in after the start of their shift.

40.     Pursuant to Defendants' policies, Plaintiffs and all similarly situated employees are required to clock out no more than 7 minutes after the end of their shift.

41.     As a result of Defendants' policies, Plaintiffs and all similarly situated employees typically clock in and begin working 7 minutes prior to the start of their shift.

42.     As a result of Defendants' policies, Plaintiffs and all similarly situated employees do not typically clock in after the start of their shift, because if they do, they are subject to discipline.

43.     Per Defendants' rounding system, none of the pre-shift work (up to 7 minutes per day) is paid as Defendants round this time to the next 15-minute interval, the employees' scheduled start time.

44.     Accordingly, at the start of an employee's shift, Defendants' rounding system is rigged in favor of Defendants because Defendants utilize their disciplinary system to ensure that, most of the time, the rounding which occurs at the start of the shift decreases the amount of compensable time Defendants pays their employees.

45.     Moreover, Plaintiffs and all similarly situated employees, at the end of the day, are required to clock out no more than 7 minutes after the end of their shift.

46.     Plaintiffs and all similarly situated employees do not typically leave work early; instead, they routinely leave work and clock out between the end of their shift and 7 minutes thereafter.

47.     Accordingly, at the end of an employee's shift, Defendants' rounding system is rigged in favor of Defendants because the rounding which occurs at the end of their shift decreases the amount of compensable time Defendants pays their employees.

48.     In sum, Defendants' rounding policy and practice is used in such a manner that it results, over a period of time, in failure to compensate their employees properly for all the time they have actually worked.

49.     Defendants have no good faith basis to use such a rigged rounding system as their time clocks record the actual clock in and clock out times to at least a one-minute accuracy. Defendants have complete knowledge of all hours worked by Plaintiffs and all other similarly situated employees.

50.     Defendants' failure to pay this unpaid time has resulted in Plaintiffs and all similarly situated employees being regularly denied proper compensation under the FLSA and/or the MMWL.

51.     Plaintiffs and all similarly situated employees, in conformance with Defendants' clock-in and clock-out policies, and disciplinary policies, regularly clocked in and commenced work several minutes before the start of their shifts.

52.     For example, during the workweek of 2/5/16 to 2/11/16 (Defendants' workweek runs from Friday to Thursday), Defendants paid a direct hourly wage of $7.09 to Plaintiff Allen for approximately forty (40) hours of work, based on Plaintiff Allen's rounded clock-in and clock-out times.  Defendants' rounding policy resulted in Plaintiff Allen receiving no direct hourly wage

for at least fifteen (15) minutes (or 0.25 hours) of work during that workweek. Thus, during that workweek, Plaintiff Allen actually worked 40.25 hours, and received a total weekly wage of $283.63 resulting in an hourly wage of $7.05 per hour. Therefore, during that workweek, Plaintiff Allen's wages fell below the requisite federal minimum wage ($7.25/hour) and the requisite Missouri state minimum wage ($7.65/hour). Because the amount Plaintiff Allen was paid during that workweek divided by the number of hours he actually worked resulted in an amount less than the statutory requirement, Defendants Pinnacle and River City violated state and federal minimum wage requirements.

53. During that workweek and others, Defendants' rounding policy caused Plaintiffs and all similarly situated employees' wages to fall below the requisite minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over 40 in a single workweek).

**Unpaid Job Training**

54. Defendants require dealers to either complete an unpaid dealer training course or have previous dealing experience before they are hired.

55. Once hired, Defendants require Plaintiffs and all similarly situated dealers to expand their dealing skills and learn how to deal additional table games. Defendants also have other hourly employees who are required to participate in unpaid training programs throughout their employment.

56. For this purpose, Defendants provide training to their employees on their premises. Defendants provide training on various policies and also on table games offered at the casino, including "carnival games" and other specialty games such as roulette and craps.

57.     However, Plaintiffs and all other similarly situated employees are not paid for time spent in Defendants' training classes.

58.     Defendants' training sessions are typically scheduled during regular working hours, forcing employees to reschedule their shifts in order to attend.

59.     Plaintiffs and all similarly situated employees' attendance at Defendants' training programs is compensable working time under the FLSA.

60.     Defendants' job postings state that dealers will be required to learn additional games during their employment.

61.     Defendants demand that dealers learn how to deal new games so that they are able to work more stations on the casino floor.

62.     Defendants' employees are led to believe that not participating in the training will have adverse effects on performance reviews, assignment to less desirable shifts or tasks, termination or demotion.

63.     Defendants' training sessions are designed to make their employees more effective at their current jobs and are directly related to employees' jobs for Defendants.

64.     Defendants consider such guidance and/or training an "on-going process under the direction of all casino supervisors."

65.     Defendants do not compensate Plaintiffs and all similarly situated employees for their attendance at such training sessions.

66.     Upon information and belief, Defendants adhere to the same training policies and practices with respect to Plaintiffs and all other similarly situated dealers at all of their casino locations nationwide.

67.     Defendants' refusal and failure to pay Plaintiffs and all similarly situated employees for attending such training sessions is a violation of both state and federal wage and hour laws.

68.     Plaintiffs and other similarly situated dealers participated in unpaid training programs on Defendants' premises.

69.     Defendants' unpaid training policy resulted in Plaintiffs and other similarly situated dealers receiving no direct hourly wage for such training hours during those workweeks.

70.     During those workweeks, Defendants' unpaid training policy caused Plaintiffs' and other similarly situated employees' wages to fall below the requisite minimum wage and/or caused them to incur overtime for which they were not compensated (for all hours worked over 40 in a single workweek).

### Entitlement to the Tip Credit – Failure to Give Notice

71.     As discussed above, an employer may, in certain circumstances, take a "tip credit" toward its minimum wage obligations for tipped employees.  Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2).

72.     The federal regulations expand on the language of the FLSA by explaining as follows:

[A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash that is to be paid to the

tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

73.     Defendants employ Plaintiffs and other similarly situated tipped employees by paying a sub-minimum direct hourly wage, but failed to properly notify them of the tip credit requirements of the FLSA.

74.     Specifically, Plaintiffs and other similarly situated tipped employees are not informed, in advance of Defendants' use of the tip credit, of: (1) the amount of the cash that is to be paid to the tipped employee by Defendants; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and/or (4) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

75.     Because Defendants have failed to properly inform Plaintiffs and other similarly situated tipped employees of the required tip credit provisions, Defendants have willfully violated state and/or federal law by failing and refusing to pay all minimum wages due and owing.

**Entitlement to the Tip Credit – Misallocation of Tip-Pool Funds**

76.     While the FLSA permits tip pools, such tip pools must be validly in place.  Pursuant to the FLSA, several conditions must be met for a tip pool to be valid.  The tip pool must only involve tipped employees, it must only apply to tips collected by the tipped employees, it cannot result in employees receiving a sub minimum wage, and the contributions to the tip pool must be customary and reasonable.  29 U.S.C. § 203(m), and Wage and Hour Division Field Operations Handbook at 30d04.

77.     Defendants employ Plaintiffs and other similarly situated tipped employees, and those employees must participate in a tip pool.  Employees who receive tips, contribute those tips into the tip pool.  The tip pool funds are then divided up among those employees.

78.      However, Defendants failed to properly impose and manage the tip pool by allowing non-tipped employees and/or managers to participate in the tip pool.  Specifically, a number of Defendants' non-tipped and/or managerial employees unlawfully receive portions of their compensation from the tip pool.

79.     Because non-tipped and/or managerial employees receive money from the tip pool, Plaintiffs and the other similarly situated tipped employees do not receive that money, thus they do not receive the full amount of their tip pool compensation to which they are entitled.

80.     Because Defendants have failed to properly institute a valid tip pool and make unlawful distributions of the tip pool they are not entitled to a tip credit and Defendants have willfully violated federal and/or state law by failing and refusing to pay all minimum wages due and owing to Plaintiffs and all other similarly situated employees.

**<u>Failure to Pay Agreed-Upon PTO Benefits</u>**

81.     Defendants entered into a contract with Plaintiffs and all similarly situated employees through which they agreed that employees would accrue "paid time off" ("PTO") for every hour worked based on the specific employee's length of service with the company.

82.     Defendants also agreed that PTO "will be paid at the employee's current regular rate of pay at the time it is taken."

83.     Pursuant to state and federal law, the "regular rate of pay" is a term of art that must be, at a minimum, equal to or greater than the state and/or federally mandated minimum wage. Further, the "regular rate of pay" must be determined pursuant to federal regulations.

84.     Defendants breached this contract by failing to pay Plaintiffs and all other similarly situated employees PTO hours at their then current regular rate of pay (as that term is defined under applicable state and/or federal law) at the time PTO was taken.

85.     Because of Defendants' breach, Plaintiffs and all similarly situated employees have been damaged.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

86.     Plaintiffs re-allege the allegations set forth above.

87.     Plaintiffs bring Count I of the FLSA claim arising out of Defendants' unlawful time-clock rounding policy as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

     a.     FLSA Time-Clock Rounding Collective: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last three (3) years within the United States.

88.     Plaintiffs bring Count II of the FLSA claim arising out of Defendants' unlawful unpaid training policy as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> a.      FLSA Unpaid Training Collective: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last three (3) years within the United States.

89.     Plaintiffs bring Count III, the FLSA claim arising out of Defendants' tip credit notification policy, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> a.      FLSA Unlawful Tip Credit Collective: All persons currently and formerly employed by Defendants in hourly positions paid a direct hourly wage that is below the applicable federal minimum wage rates who worked at any time during the last three (3) years within the United States.

90.     Plaintiffs bring Count IV, the FLSA claim arising out of Defendants' misallocated tip-pool funds, as an "opt in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective action class:

> a.      FLSA Unlawful Tip Pool Class: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last three (3) years within the United States.

91.     Plaintiffs' FLSA claims (Counts I-IV) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

92.     Plaintiffs, individually and on behalf of all others similarly situated, seek relief on a collective basis challenging Defendants' above-described FLSA violations. The number and

identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

93. Plaintiffs bring Count V, the MMWL claim arising out of Defendants' unlawful time-clock rounding policy, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

      a. <u>MMWL Time-Clock Rounding Class</u>: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last two (2) years within the State of Missouri.

94. Plaintiffs bring Count VI, the MMWL claim arising out of Defendants' unpaid training policy, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

      a. <u>MMWL Unpaid Training Class</u>: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last two (2) years within the State of Missouri.

95. Plaintiffs bring Count VII, the MMWL claim arising out of Defendants' tip credit notification policy, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

      a. <u>MMWL Unlawful Tip Credit Class</u>: All persons currently and formerly employed by Defendants in hourly positions paid below the applicable state minimum wage rates who worked at any time during the last two (2) years within the State of Missouri.

96.     Plaintiffs bring Count VIII, the MMWL claim arising out of Defendants' misallocated tip-pool funds, as action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

      a.    <u>MMWL Unlawful Tip Pool Class</u>: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last two (2) years within the United States.

97.     Plaintiffs bring Count IX, the unjust enrichment/quantum meruit claim, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

      a.    <u>Unjust Enrichment / Quantum Meruit Class</u>: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last five (5) years within the United States.

98.     Plaintiffs bring Count X, the breach of contract claim, as a class action under Fed. R. Civ. P. 23, on behalf of themselves and the following class:

      a.    <u>Breach of Contract Class</u>: All persons currently and formerly employed by Defendants in hourly positions who worked at any time during the last five (5) years within the United States.

99.     Plaintiffs' MMWL claims (Count V-VIII) unjust enrichment/quantum meruit claims (Count IX), and breach of contract claims (Count X) described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

100.     These classes each number in the hundreds of thousands of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

101.    There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Defendants' actions include, without limitation, the following:

a.    Whether Defendants violated the law when they failed to pay Plaintiffs and class members for all hours worked;

b.    Whether Defendants had policies and practices of failing to compensate Plaintiffs and class members for all time worked;

c.    Whether Defendants failed to pay Plaintiffs and class members overtime compensation required under R.S.Mo. § 290.500 *et seq.*;

d.    Whether Defendants were unjustly enriched by virtue of their policies and practices with respect to Plaintiffs' and class members' pay;

e.    Whether Defendants failed to properly inform their hourly employees being paid sub-minimum wage rates of the requirements for the tip credit;

f.    Whether Defendants misallocated tip pool funds, failed to validly institute the tip pool, and/or failed to properly manage the tip pool;

g.    Whether Defendants willfully violated state and federal wage and hour laws; and

h.    Whether Defendants maintained a lawful timekeeping system.

102.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

103. Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful practices as the Plaintiffs.

104. A class action is the superior method for the fair and efficient adjudication to Plaintiffs' claims. Defendants have acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

105. Plaintiffs are adequate representatives because they are members of each of the respective classes they seek to represent, and their interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

106. Maintenance of this action is a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## ALLEGATIONS APPLICABLE TO ALL FLSA CLAIMS (COUNTS I-IV)

107. At all times material herein, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

108. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

109. Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

110. During all relevant times to this action, Defendants were the "employers" of Plaintiffs and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

111. During all times relevant to this action, Plaintiffs and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

112. Plaintiffs and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiffs and all similarly situated employees must be paid minimum wages in accordance with 29 U.S.C. § 206.

113. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

114. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) apply here.

115. Plaintiffs and all similarly situated employees are victims of uniform and nationwide compensation policies. Based on information and belief, Defendants are applying the

same unlawful compensation policies to all similarly situated employees in their gaming and entertainment facilities nationwide.

116. Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three (3) years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

117. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

118. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## ALLEGATIONS APPLICABLE TO ALL MMWL CLAIMS (COUNTS V-VIII)

119. At all times relevant, Plaintiffs and the class members have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law ("MMWL"), R.S.Mo. § 290.500 *et seq*.

120. The MMWL regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a higher minimum wage than that provided for under federal law. R.S.Mo. §§ 290.500(3) & (4); R.S.Mo. § 290.505.1.

121. The MMWL should be construed in accordance with its provisions and those of the FLSA. Specifically, the Missouri Department of Labor has promulgated regulations providing that except as otherwise provided by Missouri law, the interpretation and enforcement of the MMWL follows the FLSA and its companion regulations. *See* 8 C.S.R. § 30-4.010(1).

122. During all times relevant to this action, Defendants were the "employers" of Plaintiffs and the class members within the meaning of the MMWL. R.S.Mo. §§ 290.500(3), (4).

123. During all times relevant to this action, Plaintiffs and the class members were Defendants' "employees" within the meaning of the MMWL. R.S.Mo. §§ 290.500(3).

124. Plaintiffs and the class members are covered, non-exempt employees within the meaning of the MMWL. Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek. R.S.Mo. § 290.502.1.

125. Pursuant to the MMWL, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of forty (40) hours in a workweek. R.S.Mo. § 290.505.1.

126.    Although the MMWL contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none of those exceptions (or exemptions) apply here.  R.S.Mo. § 290.500(3).

127.    Plaintiffs and the class members are victims of uniform and employer-based compensation policies.  Based on information and belief, Defendants are applying the same unlawful compensation policies to Plaintiffs and the class members in their gaming and entertainment facilities in the State of Missouri.

128.    Plaintiffs and the Class are entitled to damages equal to all unpaid regular and overtime wages due within two (2) years preceding the filing of this Complaint, plus periods of equitable tolling, along with an additional equal amount as liquidated damages, less any amount actually paid to the employees by Defendants.  R.S.Mo. § 290.527.

129.    Plaintiffs and the Class are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

130.    Defendants are also liable to Plaintiffs and the Class for costs and reasonable attorney fees incurred in this action.  R.S.Mo. § 290.527.

## COUNT I - FLSA (Unpaid Overtime & Minimum Wages)

### Arising Out of Defendants' Unlawful Time-Clock Rounding Policy

### (Brought Against Defendants by Plaintiffs, Individually, and on Behalf of All Others Similarly Situated)

131.    Plaintiffs re-allege the allegations set forth above.

132.    Defendants violated the FLSA by failing to pay Plaintiffs and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

133.    Specifically, as discussed above, Defendants utilize an unlawful rounding policy that, when combined with their disciplinary policies, forces employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

134.    Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked.

**WHEREFORE**, on Count I of this Complaint, Plaintiffs and all similarly situated employees demand judgment against Defendants and pray this Court:

a.    Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

b.    Award Plaintiffs and all similarly situated employees damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

c.    Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

f.    Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT II - FLSA (Unpaid Overtime & Minimum Wages)

**Arising Out of Defendants' Unpaid Training Policy**

**(Brought Against Defendants by Plaintiffs, Individually, and
on Behalf of All Others Similarly Situated)**

135.    Plaintiffs re-allege the allegations set forth above.

136. Defendants violated the FLSA by failing to pay Plaintiffs and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

137. Specifically, as discussed above, Defendants forced their hourly employees to attend unpaid training classes as part of their policy of mandatory and ongoing training.

138. Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked by forcing their employees to work off-the-clock by attending such unpaid training classes.

**WHEREFORE**, on Count II of this Complaint, Plaintiffs and all similarly situated employees demand judgment against Defendants and pray this Court:

    a.    Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

    b.    Award Plaintiffs and all similarly situated employees damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

    c.    Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

    d.    Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

    e.    Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

    f.    Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

## COUNT III - FLSA (Unpaid Minimum Wages)

**Arising Out of Defendants' Tip Credit Notification Policy**

**(Brought Against Defendants by Plaintiffs, Individually, and
on Behalf of All Others Similarly Situated)**

139.     Plaintiffs re-allege the allegations set forth above.

140.     Defendants violated the FLSA by failing to pay Plaintiffs and all others similarly situated minimum wages for all hours worked in a workweek.

141.     Specifically, Defendants paid Plaintiffs and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the federal minimum wage.

142.     In particular, Plaintiffs and other similarly situated tipped employees were not informed, in advance of Defendants' use of the tip credit, of: (1) the amount of the cash that is to be paid to the tipped employee by Defendants; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and/or (4) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

143.     As Defendants have failed to properly inform Plaintiffs and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendants have willfully violated state and/or federal law by failing and refusing to pay all minimum wages due and owing to Plaintiffs and other similarly situated employees.

144.     Defendants' practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and therefore, Plaintiffs and the similarly situated tipped employees were not properly paid minimum wages pursuant to the FLSA.

**WHEREFORE**, on Count III of this Complaint, Plaintiffs and all similarly situated employees demand judgment against Defendants and pray this Court:

    a.    Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

    b.    Award Plaintiffs and all similarly situated employees damages for unpaid overtime wages under 29 U.S.C. § 216(b);

    c.    Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

    d.    Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

    e.    Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

    f.    Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

## <u>COUNT IV - FLSA (Unpaid Minimum Wages)</u>

### Arising Out of Defendants' Misallocation of Tip Pool Funds

### (Brought Against Defendants by Plaintiffs, Individually, and on Behalf of All Others Similarly Situated)

145.    Plaintiffs re-allege the allegations set forth above.

146.    Defendants violated the FLSA by implementing and maintaining an invalid tip pool, thus failing to pay Plaintiffs and other similarly situated employees all of the tips to which they were entitled.

147.    Specifically, Defendants includes non-tipped and/or managerial employees in the tip pool participation. Because those employees receive portions of the tip pool which Plaintiffs

and the similarly situated employees are entitled to, Plaintiffs and the similarly situated employees do not receive all of the compensation to which they are entitled.

148.    Defendants' practice was to unlawfully and willfully fail to comply with the requirements of implementing and implementing a valid tip pool and therefore, Plaintiffs and the similarly situated tipped employees were not properly compensated pursuant to the FLSA.

**WHEREFORE**, on Count IV of this Complaint, Plaintiffs and all similarly situated employees demand judgment against Defendants and pray this Court:

a.    Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

b.    Award Plaintiffs and all similarly situated employees damages for unpaid wages and/or tips under 29 U.S.C. § 216(b);

c.    Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.    Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

f.    Award Plaintiffs and all similarly situated employees such other relief as the Court deems fair and equitable.

### COUNT V – MMWL (Unpaid Overtime & Minimum Wages)

**Arising Out of Defendants' Unlawful Rounding Policy**

**(Brought Against Defendants by Plaintiffs, Individually,
and on Behalf of All Others Similarly Situated)**

149.    Plaintiffs re-allege the allegations as set forth above.

150.     Defendants violated the MMWL by failing to pay Plaintiffs and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

151.     Specifically, as discussed above, Defendants utilize an unlawful rounding policy that, when combined with their disciplinary policies, forces employees to work off-the-clock without being paid at the legal and applicable wage rates for both straight and overtime hours.

152.     Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked.

**WHEREFORE**, on Count V of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray this Court:

a.     Certify the state law claim set forth in Count V above as a class action pursuant to Fed. R. Civ. P. 23;

b.     Award Plaintiffs and the Class damages for unpaid minimum wages and unpaid overtime wages under R.S.Mo. § 290.527;

c.     Award Plaintiffs and the Class liquidated damages under R.S.Mo. § 290.527;

d.     Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

e.     Award Plaintiffs and the Class attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.     Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

**COUNT VI – MMWL (Unpaid Overtime & Minimum Wages)**

**Arising Out of Defendants' Unpaid Training Policy**

**(Brought Against Defendants by Plaintiffs, Individually,
and on Behalf of All Others Similarly Situated)**

153.    Plaintiffs re-alleges the allegations as set forth above.

154.    Defendants violated the MMWL by failing to pay Plaintiffs and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.

155.    Specifically, as discussed above, Defendants forced their hourly employees to attend unpaid training classes as part of their policy of mandatory and ongoing training.

156.    Defendants' practice was to unlawfully and willfully fail to properly pay their hourly employees for all hours worked by forcing their employees to work off-the-clock by attending such unpaid training classes.

**WHEREFORE**, on Count VI of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray this Court:

        a.      Certify the state law claim set forth in Count VI above as a class action pursuant to Fed. R. Civ. P. 23;

        b.      Award Plaintiffs and the Class damages for unpaid minimum wages and unpaid overtime wages under R.S.Mo. § 290.527;

        c.      Award Plaintiffs and the Class liquidated damages under R.S.Mo. § 290.527;

        d.      Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

        e.      Award Plaintiffs and the Class attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.      Award Plaintiffs and the Class such other relief as the Court deems fair and

equitable.

**COUNT VII – MMWL (Unpaid Minimum Wages)**

**Arising Out of Defendants' Tip Credit Notification Policy**

**(Brought Against Defendants by Plaintiffs, Individually,
and on Behalf of All Others Similarly Situated)**

157.    Plaintiffs re-allege the allegations as set forth above.

158.    Defendants violated the MMWL by failing to pay Plaintiffs and all others similarly situated minimum wages for all hours worked in a workweek.

159.    Specifically, Defendants paid Plaintiffs and all others similarly situated below the state minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the state minimum wage.

160.    In particular, Defendants failed to comply with the notification requirements set forth within the express language of the FLSA and supporting federal regulations, which are controlling within the context of the MMWL.

161.    In particular, Plaintiffs and other similarly situated tipped employees were not informed, in advance of Defendants' use of the tip credit, of: (1) the amount of the cash that is to be paid to the tipped employee by Defendants; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and/or (4) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

162.     As Defendants have failed to properly inform Plaintiffs and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendants have willfully violated state law by failing and refusing to pay all minimum wages due and owing to Plaintiffs and other similarly situated employees.

163.     Defendants' practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and therefore, Plaintiffs and the similarly situated tipped employees were not properly paid minimum wages pursuant to the MMWL.

**WHEREFORE**, on Count VII of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray this Court:

a.     Certify the state law claim set forth in Count VII above as a class action pursuant to Fed. R. Civ. P. 23;

b.     Award Plaintiffs and the Class damages for unpaid overtime wages under R.S.Mo. § 290.527;

c.     Award Plaintiffs and the Class liquidated damages under R.S.Mo. § 290.527;

d.     Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

e.     Award Plaintiffs and the Class attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.     Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## COUNT VIII - MMWL (Unpaid Wages)

**Arising Out of Defendants' Misallocation of Tip Pool Funds**

**(Brought Against Defendants by Plaintiffs Individually and
on Behalf of All Others Similarly Situated)**

164. Plaintiffs re-allege the allegations set forth above.

165. Defendants violated the MMWL by implementing and maintaining an invalid tip pool, thus failing to pay Plaintiffs and other similarly situated employees all of the tips to which they were entitled.

166. Specifically, Defendants includes non-tipped and/or managerial employees in the tip pool participation. Because those employees receive portions of the tip pool which Plaintiffs and the similarly situated employees are entitled to, Plaintiffs and the similarly situated employees do not receive all of the compensation to which they are entitled.

167. Defendants' practice was to unlawfully and willfully fail to comply with the requirements of implementing and implementing a valid tip pool and therefore, MMWL and the similarly situated tipped employees were not properly compensated pursuant to the FLSA.

**WHEREFORE**, on Count VIII of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray this Court:

       a.    Certify the state law claim set forth in Count VIII above as a class action pursuant to Fed. R. Civ. P. 23;

       b.    Award Plaintiffs and the Class damages for unpaid overtime wages under R.S.Mo. § 290.527;

       c.    Award Plaintiffs and the Class liquidated damages under R.S.Mo. § 290.527;

       d.    Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law;

e.    Award Plaintiffs and the Class attorneys' fees and costs as allowed by R.S.Mo. § 290.527; and

f.    Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## COUNT IX

**Unjust Enrichment / Quantum Meruit**

**(Brought Against Defendants by Plaintiffs, Individually, and on Behalf of All Others Similarly Situated)**

168.    Plaintiffs re-allege the allegations set forth above.

169.    Defendants benefited from the unpaid work performed by Plaintiffs and the Class prior to the start of their shifts, during mandatory training time, and after their shifts. Additionally, Defendants benefited by failing to pay their employees at the legal and applicable wage rates set by state and/or federal law, thereby failing to pay all minimum wages and overtime wages in compliance with the law.

170.    Defendants were aware or should have been aware that they were receiving the benefit of this unpaid work at the time the work was being performed and accepted and retained that benefit without paying fair compensation for the same.

171.    Defendants' acceptance and retention of the benefit of Plaintiffs and the Class's unpaid labor was inequitable and resulted in Defendants being unjustly enriched.

**WHEREFORE**, on Count IX of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray this Court:

a.    Certify the state law claim set forth in Count IX above as a class action pursuant to Fed. R. Civ. P. 23;

b.    Order Defendants to disgorge the value of their ill-gained benefits to Plaintiffs and the Class;

c.    Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law; and

d.    Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## COUNT X

### Breach of Contract

### (Brought Against Defendants by Plaintiffs, Individually, and on Behalf of All Others Similarly Situated)

172.    Plaintiffs re-allege the allegations set forth above.

173.    Defendants entered into a contract with Plaintiffs and all similarly situated employees through which they agreed that: (1) employees would get paid an agreed-upon hourly rate for every hour worked during their employment; and (2) employees would accrue "paid time off" ("PTO") for every hour worked based on the employees' length of service with the company.

174.    Defendants also agreed that PTO "will be paid at the employee's current regular rate of pay at the time it is taken."

175.    Defendants' breached this contract by: (1) failing to pay Plaintiffs and all others similarly situated their agreed-upon hourly rate for every hour worked during their employment; and (2) failing to pay Plaintiffs and all others similarly situated PTO hours at their current regular rate of pay (as that term is defined under applicable federal and/or state law) at the time PTO was taken.

176.    Because of Defendants' breach, Plaintiffs and all others similarly situated have been damaged.

177.     Because of Defendants' breach, Plaintiffs and all others similarly situated have been damaged.

178.     WHEREFORE, on Count X of this Complaint, Plaintiffs and the Class demand judgment against Defendants and pray this Court:

       a.     Certify the state law claim set forth in Count X above as a class action pursuant to Fed. R. Civ. P. 23;

       b.     Order Defendants to pay Plaintiffs and the Class for the improperly withheld wages in violation of their contract;

       c.     Award Plaintiffs and the Class pre-judgment and post-judgment interest as provided by law; and

       d.     Award Plaintiffs and the Class such other relief as the Court deems fair and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby request a trial by jury of all issues so triable.

Dated:  May 12, 2017

Respectfully submitted,

OSMAN & SMAY LLP

By:     /s/ Matthew E. Osman
          Matthew E. Osman, MO Bar #60137
          Kathryn S. Rickley, MO Bar #59435
          8500 W. 110th Street, Suite 330
          Overland Park, Kansas 66210
          Telephone:    (913) 667-9243
          Facsimile:    (866) 470-9243
          mosman@workerwagerights.com
          krickley@workerwagerights.com

and

McCLELLAND LAW FIRM
*A Professional Corporation*

By:     /s/ Ryan L. McClelland
          Ryan L. McClelland, MO Bar #59343
          Joni E. Bodnar, MO Bar #67955
          The Flagship Building
          200 Westwoods Drive
          Liberty, Missouri   64068-1170
          Telephone:    (816) 781-0002
          Facsimile:    (816) 781-1984
          ryan@mcclellandlawfirm.com
          jbodnar@mcclellandlawfirm.com

          ATTORNEYS FOR PLAINTIFFS